NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| DOMINQUE BERGANTINO, | Civil Action No.: 2:16-cv-4827 (CCC) |
|---|---|
| Plaintiff, | |
| v. | |
| | OPINION |
| COMMISIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

I. **INTRODUCTION**

Before the Court is the appeal of Plaintiff Dominque Bergantino, for Linda M. Bergantino ("Claimant")[1], seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of Administrative Law Judge Dennis O'Leary ("ALJ") is affirmed in part, vacated in part, and this matter is remanded for further proceedings consistent with this Opinion.

---

[1] Linda M. Bergantino died on November 8, 2016, and her daughter, Dominique Bergantino, was substituted as the Plaintiff pursuant to an order signed on May 1, 2017. (ECF No. 12). This Opinion uses the term "Claimant" to refer to Linda M. Bergantino.

## II. BACKGROUND

### A. Procedural Background

Claimant applied for disability insurance benefits and supplemental security income on October 11, 2012, alleging disability as of August 1, 2012. (ECF No. 5 ("Tr."[2]) at 29). The application was denied initially in February 2013, and upon reconsideration in July 2013. (*Id.*) On September 25, 2014, a hearing was held before the ALJ. (*Id.*). The ALJ issued a decision on December 2, 2014 finding Claimant was not disabled, as defined by the SSA. (*Id.* at 38 (citing 20 C.F.R. §§ 404.1520(g) and 416.920(g))). Claimant requested review of the decision and the Appeals Council denied the request on June 9, 2016. (*Id.* at 1-4). On August 8, 2016, Claimant instituted this action. (ECF No. 1).

### B. Factual Background

Claimant was born on August 23, 1960. (Tr. at 37). She has a high school education and has completed two years of college. (*Id.* at 37, 229). Claimant testified that she lived with her teenage daughter. (*Id.* at 60). Claimant reported that she used to read and cook, but ceased to be able to do so due to her ailments. (*Id.* at 58, 60). Claimant reported that her daily activities included watching television. (*Id.* at 64).

Claimant worked in a number of positions, including work as a customer service representative, a cashier, and a receptionist. (*Id.* at 242). Claimant indicated in her disability report that she last worked in 2010. (*Id.* at 230).

In 2006, Claimant underwent gastric bypass surgery. (*Id.* at 33, 356-60). Claimant underwent at least twenty-six subsequent surgeries, most of which were hernia repairs. (*Id.* at 33,

---

[2] "Tr." refers to the certified record of the administrative proceedings.

359-60). Claimant had additional diagnoses from various doctors, including degenerative disc disease, diabetes mellitus, disc herniation, and arthritis. (*Id.* at 33, 309-81, 426-82, 498-502, 1633-46). Claimant also had a history of polysubstance dependence and multiple emergency room visits for abdominal pain. (*Id.*).

After Claimant received a driving under the influence charge, she was admitted to the Bergen Regional Medical Center for a psychiatric evaluation with Dr. Joel S. Federbush on January 11, 2013, and subsequently Claimant was scheduled to begin a Mentally Ill Chemical Abusers ("MICA") partial hospitalization program. (*Id.* at 34, 494-97). Claimant was initially discharged from the MICA program for non-compliance on February 26, 2013, and restarted the program on March 27, 2013. (*Id.* at 34-35). As part of the program, she received a mental status examination, which revealed coherent and intact thought processes and associations, no suicidal or homicidal ideations, no delusions or hallucinations, fair judgment, moderate insight, intact memory and cognitive functions, alertness, appropriateness, and a depressed mood. (*Id.* at 35, 937). Claimant was again discharged from the MICA program on April 22, 2013, and again restarted the program on June 14, 2013. (*Id.* at 35). Claimant was discharged on June 18, 2013 with diagnoses of bipolar disorder I, alcohol abuse, and cocaine abuse. (*Id.* at 35, 951). During Claimant's mental examination on discharge, she was calm, cooperative, happy, and had a bright affect. (*Id.*).

During the time she was in and out of the MICA program, on February 6, 2013, Claimant underwent a consultative examination with Dr. Richard Mills, the state agency medical consultant. (*Id.* at 34-35, 498-500). The examination contrasted many of Claimant's complaints of disabling symptoms and limitations. (*Id.* at 34-35).

Following this, on December 26, 2013, Dr. Asad Hussein, a treating psychiatrist since July

3

1, 2013, completed a psychiatric impairment questionnaire. (*Id.* at 35-36, 1617-24). The questionnaire reported diagnoses of major depressive disorder and panic disorder without agoraphobia. (*Id.*). Dr. Hussein opined that Claimant had problems with understanding, memory, concentration, social interaction, adaptation, and low-level stress. (*Id.*). It was further opined that Claimant would be frequently absent from work. (*Id.*). Dr. Hussein also completed a multiple impairment questionnaire. (*Id.* at 36, 1625-32). Dr. Hussein opined that in an eight-hour work day, Claimant could sit for four to five hours, stand and walk for up to one hour, and lift and carry no significant weight. (*Id.*).

On July 21, 2014, Dr. Krystyna Szewczyk-Szczech, a treating medical doctor since 2012, completed an impairment questionnaire. (*Id.* at 35, 1647-51). The questionnaire reported diagnoses of neck, back, knee, wrist, and abdominal pain, headaches, memory loss, right sided mouth twitching, right foot movement, COPD, diabetes mellitus, and insomnia. (*Id.*). Dr. Szewczyk-Szczech opined that in an eight-hour work day, Claimant could sit, stand, and walk less than one hour each, and that Claimant could occasionally lift and carry up to five pounds. (*Id.*). It was further opined that Claimant had occasional use of her upper extremities, and that Claimant had interference with her attention and concentration. (*Id.*).

Dr. Michael Olla, a treating psychiatrist since January 16, 2013, completed an additional mental impairment questionnaire on September 15, 2014. (*Id.* at 36, 1733-37). The questionnaire reported diagnoses of mood disorder, anxiety disorder, and psychotic disorder. (*Id.*). Dr. Olla opined that Claimant had problems with understanding, memory, adaptation, concentration, persistence, and social interaction. (*Id.*).

### III. **LEGAL STANDARD**

4

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)).

### B. Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

5

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

### C.  Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. *See Sykes*, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the plaintiff has an impairment that limits her ability to work. *See id.* Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability.

*See id.* at 262-63. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. *See id.* at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform her past relevant work. *See id.* Fifth, if the plaintiff's RFC is not enough to perform her past relevant work, the ALJ must determine whether there is other work in the national economy that the plaintiff can perform. *See id.*

The evaluation continues through each step unless it is determined at any point that the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, and the burden shifts to the Commissioner at step five. *See Sykes*, 228 F.3d at 263. Neither party bears the burden at step three. *See id.* at 263 n.2.

## IV.  DISCUSSION

### A.  Summary of the ALJ's Findings

At step one, the ALJ found that Claimant met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 31).

At steps two and three, the ALJ found that Claimant's impairments of status post gastric bypass surgery and multiple hernia repairs, degenerative disk disease, diabetes mellitus, disc herniation, arthritis, depression, bipolar disorder, anxiety, and panic disorder without agoraphobia were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 31-32).

The ALJ concluded that Claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), involving "jobs of a simple and repetitive nature involving one to two step processes; and involving occasional but not frequent

fine fingering and manipulation." (*Id.* at 33).

To reach this conclusion, the ALJ considered all of Claimant's symptoms and their consistency with the evidence. The ALJ found that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible for several reasons. (*Id.* at 33-36).

At step four, the ALJ found Claimant incapable of performing past relevant work as either a customer service representative or a receptionist, both of which require work at the sedentary exertional level, or as a cashier, which requires work at the light exertional level. (*Id.* at 37).

Finally, at step five, the ALJ considered Claimant's age, education, work experience, and RFC, and concluded that Claimant has the ability to work in jobs that exist in significant numbers in the national economy. (*Id.*). The ALJ emphasized that Claimant was fifty-one years old, which is defined as an individual closely approaching advanced age, on the date the application was filed. (*Id.*). A vocational expert ("VE") testified that given all of Claimant's individual factors, she would be able to perform the requirements of representative occupations such as produce weigher, a labeler, or a preparer. (*Id.* at 37-38). The ALJ determined that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), and found that Claimant is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (*Id.* at 38). Thus, the ALJ concluded that Claimant is not disabled under the SSA. (*Id.*).

**B. Analysis**

Claimant makes the following arguments in support of her contention that the ALJ's decision should be reversed or remanded: (1) the ALJ failed to properly weigh the medical

evidence and properly determine Claimant's RFC; (2) the ALJ failed to properly evaluate Claimant's credibility; and (3) the ALJ relied on flawed VE testimony. The Court will address each argument in turn.

1. **RFC Determination**

Claimant challenges the ALJ's RFC assessment. Claimant argues that the ALJ inadequately weighed her treating psychiatrists' and physician's opinions. (ECF No. 9 at 24-31).

"When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or for the wrong reason.' The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted). Further, an ALJ must give a treating physician's opinion controlling weight when the opinion is 1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and 2) "is not inconsistent with the other substantial evidence in [the claimant's] case record." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 202 (3d Cir.2008) (alteration in original) (citations omitted); *see also* 20 C.F.R. §§ 405.1527(c)(2), 416.927(c)(2) (stating the same legal standard).

Here, the ALJ considered all of the medical evidence and provided an explanation for why he chose to discredit Drs. Hussein and Olla, Claimant's treating psychiatrists, and Dr. Szewczyk-Szezech, Claimant's treating physician. (Tr. at 35-36). As detailed in his opinion, the ALJ considered all of the evidence provided by the doctors. (*Id.*). Affording Drs. Hussein and Olla's opinions limited weight, the ALJ explained in detail the reasons for discounting the evidence that he rejected. (*Id.*). Among these reasons were that Drs. Hussein and Olla's opinions were not supported by the record, were inconsistent with their clinical notes, and were inconsistent with Claimant's mental status examinations. (*Id.*). The ALJ noted that:

> [C]linical notes dated August 16, 2013 through April 24, 2014, indicated that the [C]laimant was compliant with medications and she had been overall stable . . . . These included outpatient psychotherapy clinical notes from Dr. Hussein and Dr. Olla. In addition, mental status examinations during the MICA programs in 2013, indicated that the [C]laimant did not have depressive symptoms and was psychiatrically stable.

(*Id.* at 36).

The ALJ similarly explained the reasons for affording Dr. Szewczyk-Szezech's opinions little weight. (*Id.* at 35). The ALJ noted that Dr. Szewczyk-Szezech's opinions were not supported by any treating or clinical notes. (*Id.* at 35, 1647-51). It is undisputed that Claimant bears the burden of providing evidence that she did not have the RFC to perform any substantial gainful activity as of her alleged onset date. *See* 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.") (citing *Ramirez v. Barnhart*, 372 F.3d 546, 550 (3d Cir. 2004)). With the evidence provided, the ALJ must determine whether Claimant suffers from an underlying "medically determinable impairment that could reasonably be expected to produce [Claimant's] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b). Here, Claimant had the burden to produce all medical records.

As such, there is no indication that the ALJ "reject[ed] evidence for no reason or for the wrong reason." *See Plummer*, 186 F.3d at 429. Further, an ALJ is not required to give a treating doctor's opinion controlling weight when he finds that opinion is inconsistent with other substantial evidence in the record. *See Johnson*, 529 F.3d at 202.

Claimant additionally argues that the ALJ failed to comply with Social Security Ruling ("SSR") 96-8 because the ALJ "failed to cite to any specific medical facts or even persuasive non-medical evidence to support the physical or mental RFC found for [Claimant.]" (ECF No. 9 at

10

33).

Here, the ALJ fully considered all of the medical evidence and sufficiently articulated his conclusions. The ALJ based his decision upon the Claimant's mental status examinations, Dr. Mills' consultative examination, and Claimant's subjective complaints. (Tr. at 33-36, 498-500, 1666-70, 1675-81). *See Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979-980 (3d Cir. 2003) ("The findings of fact made by state agency medical consultants must be treated as expert opinion evidence . . . ."). Moreover, as explained above, the ALJ sufficiently explained why he afforded Drs. Hussein and Olla's opinions limited weight, and Dr. Szewczyk-Szezech's little weight when determining the RFC. (Tr. at 35-36). This is "the narrative discussion [under the SSR] describing how the evidence supports each conclusion" that the ALJ is required to conduct. SSR 96-8p. Accordingly, the Court finds that the ALJ's consideration of the medical evidence and RFC assessment is supported by substantial evidence, and Claimant's argument is without merit.

### 2. Claimant's Credibility

Claimant argues that the ALJ improperly discounted Claimant's testimony. Claimant argues that "an ALJ must give great weight to a plaintiff's subjective testimony of an inability to perform work when his testimony is supported by competent medical evidence, as it is in this case." (ECF No. 9 at 33).

A plaintiff's allegations, standing alone, will not establish that she is disabled. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). When evaluating credibility, the ALJ must consider the extent to which the plaintiff's self-reported symptoms can "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.* The plaintiff's treatment history and daily activities are relevant factors in assessing credibility. *Id.* § 404.1529(c)(3).

The ALJ, as the factfinder, determines whether the plaintiff's subjective complaints are consistent with the objective medical evidence and, if not, the ALJ may discount them. *Id.* § 404.1529(c)(4). Where the ALJ "has articulated reasons supporting a credibility determination," and substantial evidence supports the ALJ's findings, that determination will be entitled to "'great deference.'" *See Horodenski v. Comm'r of Soc. Sec.*, 215 F. App'x 183, 188-89 (3d Cir. 2007) (quoting *Atl. Limousine, Inc. v. NLRB*, 243 F.3d 711, 718 (3d Cir. 2001)); *Vancord v. Colvin*, No. 13-27, 2014 WL 585413, at *2 (W.D. Pa. Feb. 14, 2014) ("[U]nder a deferential substantial evidence standard of review, it is particularly inappropriate to second guess such credibility determinations.").

Here, the ALJ determined that Claimant's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Tr. at 33). The ALJ did not "fail to give a single specific reason for finding [Claimant] not credible." (ECF No. 9 at 36). Rather, the ALJ's explanation took Claimant's testimony into account and noted that:

> [C]laimant's primary complaints were back and neck pain. She also had a noticeable "twitching" on one side of her mouth. This apparently started two months prior to the hearing and was of unknown etiology. During the hearing, the [C]laimant indicated that she had bipolar disorder and became angry and threw things. She described having mood swings and said she heard voices. However, there is no mention of this in her clinical notes. The [C]laimant related that she had trouble with concentration but when pressed for examples, she gave normal forgetfulness such as forgetting conversations sometimes.
>
> The [C]laimant indicated that she had carpal tunnel syndrome, which was noted by her primary care physician. However, there are no records of any electrodiagnostic testing and no indication of any treatment for this.
>
> Overall, the [C]laimant has received infrequent treatment for her back issues, no surgery and no epidurals.

(Tr. at 36).

The ALJ further noted that Claimant's complaints were inconsistent with the results that Dr. Mills reported during Claimant's February 6, 2013 physical consultative examination. *See*

12

*Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 164 (3d Cir. 2008) (stating that unremarkable physical examinations are relevant in determining that plaintiff was not fully credible). In contrast to Claimant's complaints of disabling symptoms and limitations, Dr. Mills reported that:

> [Claimant] transferred papers appropriately, put her shoes on and off without difficulty, and ascended and descended the exam table unassisted . . . [her] sensation was intact . . . [m]otor strength was 5/5 . . . [r]ange of motion was intact except [for reduced shoulder forward flexion and shoulder abduction] . . . [s]he could fully extend her hands, make fists, and oppose all digits, [h]er grip and pinch strength [were] 5/5 . . . [she] was observed to turn her neck at least 70 degrees in both directions when she was not being formally tested . . .[s]he walk[ed] on her heels and toes, [s]he walked at a reasonable pace without a handheld assistive device . . . [and] she was not utilizing a cane.

(Tr. at 34-35, 498-500).

Additionally, the ALJ compared Claimant's complaints of extreme limitations due to her mental impairments with the objective medical evidence. The ALJ explained that despite Claimant's complaints, clinical notes and mental status examinations "indicated that the [C]laimant was . . . overall stable . . . did not have depressive symptoms and was psychiatrically stable." (*Id.* at 36).

The ALJ sufficiently explained his analysis of the medical evidence and identified evidentiary support for his conclusion that Claimant's subjective complaints were not entirely credible. Accordingly the Court finds the ALJ's determination of Claimant's credibility was supported by substantial evidence, and Claimant's argument is without merit.

### 3. VE Testimony

Finally, Claimant asserts that the ALJ's step five finding was not supported by substantial evidence because the hypothetical question asked to the vocational expert ("VE") did not reflect all of Claimant's credibly established impairments and limitations. ECF No. 9 at 36-39. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d. Cir. 2005) (finding that the ALJ must convey to the VE all of the credibly established limitations); *see also Ramirez v. Barnhart*, 372 F.3d, 546

(3d. Cir. 2004) (stating that when an ALJ incorporates a claimant's limitations into a hypothetical, "great specificity" and accuracy is required). Specifically, Claimant asserts that the ALJ's hypothetical to the VE, contemplating the ability to perform "jobs of a simple and repetitive nature involving one and two-step processes," did not properly account for Claimant's moderate difficulties in maintaining concentration, persistence, or pace. ECF No. 9 at 36-39.

An ALJ may ask a VE to "offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560.

The ALJ's hypothetical question to the VE must accurately convey all credibly established limitations. *See Green v. Colvin*, No. 14-1942, 2016 WL 1696797 at *3 (E.D. Pa. Apr. 27, 2016) (finding that an ALJ's RFC evaluation and hypothetical question were deficient because they failed to incorporate the ALJ's own findings that the claimant has mild limitations with concentration, persistence, or pace). Here, at step three, the ALJ determined Claimant had moderate difficulties with regard to concentration, persistence, or pace. Tr. at 32. The ALJ's hypothetical question to the VE noted that Claimant could perform only "jobs of a simple and repetitive nature involving one and two-step processes." Tr. at 68. The Court finds it is unclear whether the ALJ sufficiently included his step three findings in the hypothetical question to the VE. This limitation to simple and repetitive work does not appear to account for Claimant's difficulties in concentration, persistence, and pace as established by the RFC analysis. *See Ramirez*, 372 F.3d at 546 (hypothetical question to VE limiting claimant to "simple one or two step tasks" failed to account for the "deficiencies in pace" noted by the ALJ at step three). On remand, the ALJ should include

14

all of Claimant's credibly established impairments and limitations in his hypothetical questions to the VE.

## V. CONCLUSION

For the foregoing reasons, ALJ's decision is affirmed in part, vacated in part, and the matter is remanded for further administrative proceedings consistent with this Opinion. An appropriate Order accompanies this Opinion.

DATED: September 26, 2017

                                             **CLAIRE C. CECCHI, U.S.D.J.**